IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>PRABHAT GOYAL,<br><br>  Defendant. | No. CR 04-00201 MJJ<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL** |

Before the Court is Defendant Prabhat Goyal's Motion for Judgment of Acquittal and for New Trial. (Docket Nos. 219 and 290.) For the following reasons, the Court **DENIES** both motions.

**PROCEDURAL BACKGROUND**

On or about June 10, 2004, the grand jury returned a twenty-count Indictment charging Defendant, Prabhat Goyal (hereinafter "Goyal"), with the following violations: Count One - Conspiracy to Commit Securities Fraud 18 U.S.C § 371; Count Two - Securities Fraud in violation of 15 U.S.C. § 78j(b) and 78ff, 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2; Counts Three through Ten - False SEC Filings and aiding and abetting in violation of 15 U.S.C. § 78j(b) and 78ff; 17 C.F.R. § 240 10b-5 and 18 U.S.C. § 2; and Counts Eleven through Nineteen - False Statement to Auditors and Aiding and Abetting in violation of 15 U.S.C. § 78m(b)2 and 78ff; 17 C.F.R § 240.13b2-2 and 18 U.S.C.§ 2.

Goyal entered pleas of not guilty to all counts and trial commenced on April 12, 2007. The

Government's case in chief concluded on April 25, 2007, and Goyal promptly made a motion for judgment pursuant to Rule 29. (*See* Docket No. 222.) The Court reserved ruling on the motion and Goyal proceeded to present evidence in his case in chief. Goyal rested on May 3, 2007. (*See* Docket No. 240.) On or about May 5, 2007, the parties presented their final arguments and the jury received the Court's final instructions. On May 10, 2007, after several days of deliberation, the jury found Goyal guilty of the following counts: Securities Fraud, Count Two; False SEC Filings, Counts Three through Five and Seven through Ten, and of Making False Statements to Auditors and Counts Thirteen through Nineteen.[1] (*See* Docket No. 245.) Thereafter, Goyal filed his renewed motion of judgment of acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29") and a motion for new trial under Federal Rule of Criminal Procedure 33 ("Rule 33"). The Government filed its consolidated opposition on July 19, 2007 and Goyal filed his reply on July 26, 2007. The Court heard argument on the motions on November 8, 2007 and requested supplemental briefing pertaining to Count Two. Thereafter, the Government filed its supplemental brief on November 11, 2007 and Goyal filed his reply on November 21, 2007. The matter now stands ready for decision.

## LEGAL STANDARD

**A.    Motion for Judgment of Acquittal Pursuant to Rule 29**

A motion for judgment of acquittal tests "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt, viewing the evidence in the light favorable to the Government." *United States v. Figueroa-Paz*, 468 F.2d 1055, 1058 (9th Cir. 1972). In ruling on a Rule 29 motion, a district court must bear in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F2.d 938, 943 (9th Cir. 1977). However, where the government's evidence presented at trial fails to establish any reason to believe that an innocent explanation of the evidence was any less likely than the incriminating explanation advanced by the

---

[1] As indicated above, the grand jury returned a twenty-count Indictment against Goyal. (*See* Indictment.) Counts 11 and 12 of the Indictment charge Goyal with false statements to auditors under 15 U.S.C. §§ 78m(b)(2) and 78ff and 17 C.F.R. § 240.13b2-2 based on conduct that occurred on or about April 15, 1999 and May 12, 1999. (*Id.* at ¶ 44.) Count 20 charges Goyal with false book and records under 15 U.S.C. §§ 78m(b)(2)(A) and 78ff and 17 C.F.R. § 240.13b2-1 based on conduct beginning in or about January 1999. (*Id.* at ¶ 46). The Court, upon Goyal's motion, dismissed Counts 11 and 12 as time barred. The Government voluntarily dismissed Counts 1, 6 and 20 prior to submission of the case to the jury.

2

government, acquittal is warranted. *United States v. Vasquez-Chan*, 978 F.2d 546, 551 (9th Cir. 1992) (holding that, in prosecution for possession of drugs, evidence presented failed to establish any reason to believe innocent explanation was any less likely than incriminating explanation advanced by government); *see also United States v. Esquivel-Ortega*, 484 F.3d 1221, 1227 (9th Cir. 2007) (reversing conviction where the government's evidence of *mens rea* "did not make the government's incriminating explanation any more likely than [the defendant's] innocent explanation").

Ultimately, if the evidence presented, taken in the light most flattering to the prosecution, together with all reasonable inferences favorable to it, permits a rational jury to find each essential element of the crime charged beyond a reasonable doubt, then the evidence is legally sufficient. *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995).

**B.     Motion for New Trial Pursuant to Rule 33**

A new trial is warranted where "the evidence weighs heavily against the verdict." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). In that regard, "a district court's power to grant a motion for a new trial is much broader than its power to grant a judgment for acquittal." *Id*. at 1211. In considering a Rule 33 motion, "the court is not obligated to view the evidence in the light most favorable to the verdict but is free to weigh the evidence and evaluate for itself the credibility of witnesses." *Id*. A motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984).

A new trial is also warranted to remedy prejudicial admission of improper evidence, to undo prosecutorial errors where it is more probable than not that they materially affected the verdict, and to cure improper instructions. *See United States v. Hanna*, 293 F.3d 1080, 1087 (9th Cir. 2002) (improper evidence); *United States v. Hinton*, 31 F.3 817, 824 (9th Cir. 1994) (prosecutorial errors); *United States v. Guthrie*, 814 F.Supp 942, 947 (E.D. Wash. 1993) (improper instructions).

**ANALYSIS**

**A.     Motion for Judgment of Acquittal Pursuant to Rule 29**

Trial in this matter established that between 1998 and 2000, Network Associates

3

Incorporated ("NAI") was a publicly traded company that developed and sold software products relating to network security and network management. (*See* Govt. Exh. 601-03, NAI's 1998 10K, Docket No. 195.) As a public company, NAI was required to comply with Securities Exchange Commission ("SEC") regulations which required it to file quarterly (10Q) and annual (10-K) reports, and Forms S-8 with the SEC. NAI's 10-K reports, unlike the 10Q reports, included audited financial statements conducted by the company's outside auditors, Price Waterhouse Coopers ("PwC"). During the relevant time period, Goyal was Chief Financial Officer of NAI. Between 1998 to approximately July 1999, Evan Collins ("Collins") was controller of NAI.

Goyal attacks the jury's verdict on a number of specific grounds which are summarized below. First, Goyal contends that while the Government adduced evidence regarding certain of NAI's business practices–such as distributor discounts and the use of NetTools, Inc – it offered no testimony that these practices violated Generally Accepted Accounting Practices ("GAAP"). In the alternative, Goyal argues that the GAAP violation testimony offered by the Government cannot support the jury's verdict because it was offered by lay witnesses, rather than experts, and is therefore inadmissible opinion testimony and violates Rule 16 of the Federal Rules of Criminal Procedure. Goyal also contends that the Government failed to establish that quarter-end transactions between NAI and Ingram Micro ("IM") could not be accounted for on a sell-in basis and, *afortiori*, failed to establish the factual predicate necessary to establish that these transactions were indeed material. In addition, Goyal argues that the Government failed to show that PwC lacked access to the relevant deal terms reflected (whether through buy-in letters or debit memos), and that there is a failure of proof that any concealment of terms continued after the departure of Collins in July 1999. Finally, Goyal contends that the record fails to establish that he had actual knowledge that IM quarter-end deals were inconsistent with GAAP rules governing sell-in accounting, that NAI's overall revenue numbers were materially false or that PwC lacked access to material information. The Court will address Goyal's contentions in the order described above.

**1.     Expert Testimony to Establish GAAP Violation**

Goyal argues that the Government did not provide evidence of NAI's GAAP violation through the buy-in deals with IM. In addition, if the Court considers the Government witness' lay

4

opinion testimony as evidence of a GAAP violation, Goyal argues that this testimony is not competent because the Government is required to present expert testimony to establish a GAAP violation. Although there are cases that support Goyal's argument, this Court is not bound by the authority relied upon by Goyal. *See SEC v. Guenther*, 395 F. Supp. 2d 835 (D. Neb., 2005). The Court, therefore, finds unavailing Goyal's argument that expert testimony is a requirement for establishing a GAAP violation with respect to the current charges. Moreover, the Government did establish through the testimony of Hans Winters ("Winters") that the inconsistencies between the specific conditions of the IM buy-in letters and the requisite elements of AICPA Statement of Position 97-2, *Software Revenue Recognition* ("SOP 97-2") and Financial Accounting Standards 48 ("FAS 48") would have had an impact on NAI's revenue recognition abilities on the related transactions, and thus affected PwC's audits and reviews of NAI's financial records. (*See* Transcript of Proceedings, Hans Winters Testimony, Docket No. 208, Apr. 19, 2007, ("Winters Testimony") at 1123:25-1187:4.) The testimony of witnesses Stavers and Winters, described the buy-in agreements with specificity and constituted valid opinion testimony because it was based upon personal knowledge. *U.S. v. Turner*, 2007 WL 1367597, slip op. at 2 (W.D. Wash. May 08, 2007) (holding that an internal auditor testifying about personal knowledge gained during course of examination was not required to be qualified as an expert). Accordingly, based upon the record and inferences based thereon, the Government offered competent testimony indicating that certain business practices employed by NAI violated GAAP and the Court rejects Goyal's arguments to the contrary.

### 2. Materiality of NAI's Quarter-End Transactions

Goyal argues that the Government failed to establish the materiality of NAI's buy-in arrangements, such that the terms of the deals merited disclosure. False statements are considered material if there is a substantial likelihood that proper disclosure of the truthful statements would have been considered significant by a reasonable investor in making his investment decision. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 442 (1976). Because most publicly available information is reflected in the market price, an investor's reliance on any public material misrepresentations may be presumed for purposes of a Rule 10b-5 action. *Basic, Inc. v. Levinson*,

485 U.S. 224, 231-32 (1988). Materiality of a defendant's allegedly false statements is a determination that must be submitted to the jury. *U.S. v. Gaudin*, 515 U.S. 506, 523 (1995).

Here, the jury found that the quarter-end buy-in deals were material, and as such found defendant guilty of filing false statements in SEC 10Q, 10K, and S-8 forms. In reviewing this evidence, the Court is mindful that materiality is a fact-specific determination and, as noted above, best left to the jury. *Levinson*, 485 U.S. at 232.

The Government argues that NAI recognized revenue based on IM purchase orders and that a comparison of the total dollar values of the purchase orders associated with the quarter-end buy-in letters resulted in approximately 24% of revenue for the three-year indictment period. Ultimately, the Government posits that on a quarterly basis, the quarter-end buy-ins represented approximately 7% to 40% of NAI's total revenue and, that such percentages easily meet the standard for establishing materiality of the buy-in deals. (*See* Docket No. 208.) The Government relies, in part, on the testimony of Collins and approximately eighteen exhibits in support of its argument that the record amply supports the jury's findings with respect to materiality. (Govt.'s Opp. at 8-9.) Goyal takes umbrage with the Government's calculations and its conclusions pertaining to proof of materiality. First, Goyal asserts that the amount of revenue recognized from a transaction is not equivalent to the gross price on a buy-in letter, purchase order or invoice. Rather, he contends, to determine the amount of revenue recognized from the buy-in letter or invoices at issue, the trier of fact would necessarily need to consider the gross price on a buy-in letter and also factor in deductions for related liabilities paid in the same quarter and reserves for estimated liabilities including product returns. Second, Goyal argues that no witness ever testified that NAI's recognized revenue on any particular transaction was the same as the amount on the buy-in letter or purchase order introduced into evidence. Accordingly, Goyal vigorously argues that the Government's materiality evidence was insufficient.

Here, having reviewed the record in accord with the Rule 29 standard, the Court cannot find, that the revenue associated with the quarter-end buy-in deals was insufficient to establish this fact-specific element of the Government's case. Indeed, the combination of the amounts implicated in the purchase orders at issue and the utilization of NetTools in satisfying commitments regarding the

6

sale of product from IM, even when viewed against the backdrop of reserves for estimated returns, does not establish that the Government's proof on this fact-driven element of proof was insufficient. Instead, viewing the evidence in a light most flattering to the Government, and drawing all reasonable inferences in its favor, there was sufficient evidence for a reasonable juror to find that NAI's buy-in arrangements were material. As such, Goyal's Motion for Judgment of Acquittal is not warranted based on the materiality of the buy-in deals.

### 3. PwC's Access to the IM Buy-in Deal Terms

Goyal argues that his management representation letters to PwC were accurate and not materially misleading because PwC had access to all the terms and conditions of the quarter-end buy-in deals with IM. The Court must therefore review the evidence to see if, drawing all reasonable inferences in favor of the Government, PwC had access to the IM buy-in deal terms.

Corporate officers are liable under the 1934 Securities Exchange Act for making materially false or misleading statements to auditors. 15 U.S.C. § 78a, *et seq*. Rule 13b2-2 of the 1934 Exchange Act provides, "No director or officer of an issuer shall, directly or indirectly: (1) make or cause to be made a materially false or misleading statement to an accountant in connection with . . . (i)[a]ny audit, review or examination of the financial statements of the issuer." 17 C.F.R. § 240.13b2-2; *see also McConville v. S.E.C.*, 465 F.3d 780 (2006) (holding CFO in violation of federal securities law for omitting material information from management representation letters issued to auditors). In order to be liable under Rule 13b2-2, a defendant must have acted willfully, or intentionally undertaken an act that he knows to be lawful. *See* 17 C.F.R. § 240.13b2-2. Furthermore, information is material if a reasonable auditor would conclude that it would significantly alter the total mix of information available to him. *TSC Industries*, 426 U.S. at 445.

Here, the Government offered sufficient testimony indicating that Goyal had actual knowledge that the IM quarter-end deals were inconsistent with GAAP rules governing sell-in accounting. Per Peter Borrmann's ("Borrmann") testimony, Goyal and Borrmann met regularly to discuss the amount of revenue shortfall as it related to the quarterly target. Dale Cline testified that Goyal set the amount of the quarterly buy-in deals with IM, he authorized the parameters upon which the deal could be negotiated, and Goyal alone ultimately approved the final terms and

7

conditions of every buy-in deal with IM. The buy-in letters themselves committed NAI to conditions not set forth in the distribution agreement entered into between the companies. For example, NAI gave rebates, generous rights of returns, guaranteed margins, and excess inventory fees that were inconsistent with revenue recognition at the time of sale under 97-2 and FAS 48. Therefore, the evidence, with all inferences drawn in favor of the Government, showed that Goyal had actual knowledge that the buy-in deals were inconsistent with GAAP, and that NAI's overall revenue numbers were materially false.

The Government also offered sufficient evidence for a rational jury to find that the terms of NAI's buy-in deals with IM were material such that they should have been disclosed to PwC. Borrmann and Collins testified to the fact that the buy-in deals with IM were critical to the company's ability to meet its quarterly revenue targets. Additionally, Goyal signed management representation letters, directed to the auditors, that omitted any information regarding the specific terms of the buy-in arrangement. Furthermore, the Government offered testimony from the PwC auditors stating that this information would have been material in conducting a complete audit. (*See* Winters Testimony at 1123:25-1187:4.) Because the evidence showed that the terms of the buy-in arrangement would have altered the total mix of information relied upon by the auditors, and permitted a reasonable juror to draw this conclusion, these terms were material such that Goyal should have disclosed them to the auditors.

Finally, the Government provided sufficient evidence for a reasonable juror to find that the auditors did not have access to the buy-in deal terms. Both Stavers and Winters, the PwC audit partner and audit manager on NAI's account, testified that PwC had never seen the buy-in letters entered into with IM. (*See* Transcript of Proceedings, Robert Stavers Testimony, Docket No. 206, Apr. 18, 2007, ("Stavers Testimony") at 863:23-864:4; Winters Testimony at 1184:10-17.) The particular quarter-end purchase orders and invoices that were given to the auditors did not reference any of the unusual terms of the buy-in arrangements. (*See* Transcript of Proceedings, Justin Ward Testimony, Docket No. 195, Apr. 12, 2007, ("Ward Testimony") at 497:20-498:10, 557:16-19, 558:8-18.) Because these arrangements were material to recording NAI's revenue, the information was necessary for PwC to adequately perform their audit review. Thus, rather than relying on the

8

possibility that PwC would discover the terms of NAI's quarterly transactions, Goyal had an affirmative responsibility--as set forth in the management representation letters--to disclose the unusual terms of the quarter-end purchase orders and invoices to the auditors. Therefore, a review of the evidence, with all reasonable inferences drawn in the Government's favor, showed that PwC did not have access to the buy-in deal terms, and as such, Goyal's Motion for Judgment of Acquittal lacks merit.

### 4. Conclusion

The evidence, with all reasonable inferences drawn in favor of the Government, supports the jury's finding that Goyal knowingly engaged in an ongoing course of conduct that caused NAI's financial statements to be false and misleading because Goyal knowingly entered into material buy-in transactions with IM and signed management representations letters to NAI's auditors that omitted the relevant terms. The evidence sufficiently establishes that Goyal's conduct resulted in the issuance of NAI's false and misleading financial statements because these terms were material and not factored into PwC's audit of NAI's financial statements. The evidence presented by the Government was legally sufficient because it permitted the jury to find Goyal guilty of securities fraud beyond a reasonable doubt. Accordingly, the Court denies Goyal's Motion for Judgment of Acquittal.

## B. Motion for New Trial Pursuant to Rule 33

Goyal argues, in the alternative, that the Court should grant a new trial because the jury's verdict is contrary to the strong weight of the evidence as a whole. First, Goyal contends that the Government improperly presented lay opinion testimony by Winters to establish the GAAP violation. Second, Goyal argues that the Government made significant misstatements during closing argument, by overplaying his involvement in the buy-in deals without adequate supporting evidence. Finally, Goyal contends that there was an error in jury instructions that significantly affected the jury verdict. Specifically, Goyal argues that the jury instructions should have required a finding of "actual knowledge" of falsity, rather than "reckless indifference as to the truth or the falsity of the statement," with respect to NAI's SEC filings. (*See* Docket No. 248.)

### 1. Expert Testimony and Supporting Evidence to Establish GAAP Violation

Goyal argues that the Court should grant a new trial because the Government did not provide evidence of a GAAP violation, and alternatively contends that the Government's lay opinion testimony to establish a GAAP violation constituted a prejudicial admission because it was improper. As discussed above, there does not appear to be any authority that precludes the Government from establishing GAAP irregularities through the presentation of a lay witness with adequate personal knowledge and experience to do so. Accordingly, the Government's lay opinion testimony by Winters and Stavers was relevant and material on the question of GAAP improprieties. Thus, the testimony of Winters and Stavers regarding GAAP provided a competent basis for the jury to conclude that GAAP improprieties had occurred in concert with NAI's recognition of revenue. Moreover, the Court finds, contrary to Goyal's assertion, that the expert testimony of Messrs. Lucas and Leonard does not present a basis upon which to find that the evidence, as a whole, weighs heavily against the verdict.[2]

Goyal also contends that the Government failed to: 1) present testimony that estimates for future discounts, rebates and returns were not reasonable; 2) establish that recognition of revenue on sales had a material effect on NAI's financial statements; 3) account for Mr. Leonard's opinion that the NetTools arrangement did not constitute a "significant obligation" under FAS 48; and 4) establish that PwC lacked knowledge of the terms of the buy-in letters in the conduct of its audits and reviews. The Court has reviewed Goyal's contentions and vetted them against the evidentiary record and finds them unavailing under the Rule 33 standard.

**2.     Government's Closing Argument**

Goyal next argues that the Government committed a prosecutorial error that materially affected the verdict by making factual misstatements during closing argument and improperly shifting the burden of proof to Goyal. It is not misconduct for the Government to argue reasonable inferences based on the record. *See United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir.

---

[2] The Court notes that Goyal presented substantial evidence regarding his good faith in the conduct of the financial decisions regarding the counts of the Indictment. However, the record evidence of Goyal's regular discussions regarding the IM quarter-end buy-in deals that were necessary to meet revenue expectations, his knowledge of pertinent accounting principles, his admonitions that some concessions not be reduced to writing, and the concerns he expressed to Mr. Cline regarding Mr. Peterson's memo questioning the appropriateness of NAI's payments to IM, support the jury's findings on the question of Goyal's intent. After due consideration, the Court finds that the record evidence on this issue does not support Goyal's request for a new trial under Rule 33.

10

1993). Here, as noted in the analysis above, the Government offered significant evidence of Goyal's involvement in the buy-in deal arrangement to support their statements during closing argument. Moreover, the Government provided evidence that Goyal knowingly withheld information relating to the IM buy-in deals that was material to PwC in performing its audits and reviews. The Court also instructed the jury that statements made by the lawyers in closing arguments do not constitute evidence. (*See* Docket No. 248.) During its closing argument, the Government did not draw unreasonable inferences from the evidence, or issue factual misstatements contrary to the evidence. Accordingly, the Court finds that the Government did not engage in improper closing argument warranting merit a new trial on the merits.

### 3. Jury Instruction at Trial

Goyal contends that the jury instruction for falsity was improper because it should have required a finding of "actual knowledge" of falsity, rather than "reckless indifference as to the truth or the falsity of the statement," with respect to NAI's SEC filings. (*See* Docket No. 248.) The Court's jury instruction was legally correct under *United States v. Tarallo*, 380 F.3d 1174, 1188 (9th Cir. 2004) (stating that a defendant could be found guilty of securities fraud if the government proves beyond a reasonable doubt that the defendant made a false representation with reckless indifference to its falsity). The jury was charged on Counts Three through Five and Seven through Ten that the Government must prove beyond a reasonable doubt that Goyal acted "willfully, knowingly, and with the intent to defraud." The jury was further charged that it may find that Goyal acted willfully if it found beyond a reasonable doubt that Goyal "intentionally acted with reckless indifference as to the truth or falsity of such statement." Therefore, because the jury instructions were proper, and the evidence is consistent with the verdict, a new trial is not warranted.

### 4. Conclusion

Based upon the trial record and the legal standards by which this Court must review Defendant's Motion for New Trial, Goyal has not demonstrated that the evidence, when considered as a whole, preponderates heavily against the jury's verdict. In addition, the Government's reliance upon lay opinion to establish a GAAP violation was not prejudicial. Moreover, the Government's closing argument did not constitute prosecutorial error. Finally, under current Ninth Circuit law, the

Court's jury instruction regarding falsity was proper. Accordingly, the Court denies Defendant's Motion for New Trial because the Court finds that the evidence does not weigh heavily against the verdict, no prosecutorial errors materially affected the verdict, and the Court did not issue improper jury instructions.

Accordingly, and for the foregoing reasons set forth above, the Court **DENIES** Defendant's Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29 and **DENIES** Defendant's Motion for New Trial pursuant to Fed. R. Crim. P. 33.

Counsel for the parties are hereby **ORDERED** to meet and confer and thereafter contact the Court's courtroom deputy by 4:00 p.m. on March 25, 2008, to set a date for a telephonic status conference. The purpose of the conference will be to discuss issues related to sentencing in this matter, including but not limited to calculation of the loss amount under U.S.S.G § 2B1.1(b), number of victims under U.S.S.G. § 2B1.1(b)(2), as well as the role in the offense and sophisticated means enhancements under U.S.S.G. § 3B1.1 and 2B1.1(b). If requested, Goyal's participation in the telephonic status conference will be excused.

**IT IS SO ORDERED.**

Dated: March 21, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE