WILMER CUTLER PICKERING
 HALE AND DORR LLP
Stephen A. Jonas (stephen.jonas@wilmerhale.com)
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Ronald C. Machen (ronald.machen@wilmerhale.com)
Matthew Holmwood (matthew.holmwood@wilmerhale.com)
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

Attorneys for Defendant

PRABHAT K. GOYAL

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>PRABHAT GOYAL,<br><br>  Defendant. | Case No. CR-04-0201-SI<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL**<br><br>Hearing Date: August 29, 2008<br>Hearing Time: 11:00 a.m.<br>Location: Courtroom 10, 19th Floor<br>Before: Honorable Susan Y. Illston |

## I. INTRODUCTION

The Government concedes that Mr. Goyal is neither a flight risk nor a danger to the community, and that Mr. Goyal will not pursue an appeal for purposes of delay. Thus, the question before the Court is whether Mr. Goyal's appeal raises "substantial question[s] of law or fact" that, if determined in his favor, would likely result in reversal or new trial. 18 U.S.C. § 3143(b)(1); *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). As Judge Jenkins offered after resolving post-trial motions in this case, Mr. Goyal's appeal clearly satisfies that standard. Mr. Goyal therefore respectfully requests that this Court continue his release on bail, on the conditions currently in place, pending the resolution of his appeal.

## II. ARGUMENT

The Government's Opposition does not address three of the five grounds of appeal asserted by Mr. Goyal in support of his Motion. In particular, the Government ignores Mr. Goyal's arguments that (a) the Government failed to present evidence about Network Associates' ("NAI") reserves, and therefore did not establish that NAI's accounting had been improper; (b) the Government failed to establish that any alleged false statements were material because it did not provide a factual predicate for (or argue to the jury) its theory of materiality; and (c) Mr. Goyal's conviction was improperly upheld on the basis that he personally had an "affirmative responsibility" to disclose certain facts to NAI's auditors, PricewaterhouseCoopers ("PwC"), when there was no evidence he believed that those facts had even been withheld. As explained in Mr. Goyal's Opening Memorandum (Dkt. 325), each of these is a substantial question of law or fact relating to elements of the charges that the Government had the burden to prove and could result in reversal or a new trial.

The Government does address Mr. Goyal's two remaining grounds for appeal, namely the Government's failure to provide the jury with expert testimony establishing a GAAP violation and its insufficient proof of *mens rea*. However, with respect to these grounds, the Government merely repeats the reasons in Judge Jenkins' Order denying Mr. Goyal's post-trial motions. But the fact that Mr. Goyal's post-trial motions were denied is not dispositive here. *Handy*, 761 F.2d at 1280-81. Rather, the question is whether the grounds for appeal are at least "fairly debatable," (*id.* at 1283

Case No. CR-04-0201-SI     1     DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL

(internal quotations omitted)), or "non-frivolous." *United States v. Garcia*, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003).[1]

In any event, while relying heavily on Judge Jenkins' Order on post-verdict motions, the Government ignores altogether Judge Jenkins' view, expressed after issuing that Order, that "there are some fairly substantial issues based on this factual record and existing law that … would dovetail probably quite reasonably into [the § 3143(b)(1)] standard, such that he would remain released." Hr'g Tr. at 8:2-6 (Apr. 2, 2008).  This Court should reach the same conclusion and continue Mr. Goyal's release pending the resolution of his appeal.

### A. The Government Was Required To Present Expert Testimony To Establish A GAAP Violation

Because the Government's case was premised exclusively on an alleged misapplication of GAAP standards for sell-in accounting, it could not secure a conviction without providing the jury with expert testimony establishing that a GAAP violation in fact occurred.  As Judge Jenkins acknowledged in his post-trial Order, courts have required expert testimony in order to find a GAAP violation in *civil* securities fraud cases.  Op. Denying Post-Trial Motions (Dkt 310) at 5 (citing *SEC v. Guenthner*, 395 F. Supp. 2d 835 (D. Neb. 2005)).  Judge Jenkins decided that he was not bound by that decision, but cited no precedent in support of the Government's contrary position.  *See id.* Whether such expert testimony is required is an issue of first impression in the Ninth Circuit, and a "question not yet decided by controlling precedent can present a substantial question." *United States v. Flowers*, No. CRIM. 00-539-KI, 2005 WL 1173312, at *1 (D. Or. Apr. 25, 2005).

The Government cites without discussion *United States v. Ebbers*, 458 F.3d 110 (2d Cir. 2006), and *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007), for the proposition that "securities fraud convictions have been upheld notwithstanding the government's decisions not to present

---

[1] The Government suggests that Mr. Goyal must establish a "substantial question[s] of law or fact" under under 18 U.S.C. § 3143(b)(2) by clear and convincing evidence.  Opp. at 5.  The Government is incorrect.  While § 3143(b)(1) requires a defendant to show by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of the community—requirements the Government concedes are satisfied here—a defendant need only establish the § 3143(b)(2) criteria by a preponderance of the evidence.  *United States v. Affleck*, 765 F.2d 944, 953 n.15 (10th Cir. 1985); *United States v. Galanis*, 695 F. Supp. 1565, 1566 (S.D.N.Y. 1988).

1  expert testimony" of GAAP violations. Opp. at 4. Judge Jenkins did not rely on either decision,
2  and for good reason: they are not on point. This is not a case where the Government sought to prove
3  at trial "that a defendant was responsible for financial reports that intentionally and materially misled
4  investors" despite technically complying with GAAP. *Ebbers*, 458 F.3d at 125-26; *see also Rigas*,
5  490 F.3d at 220-21. As Judge Jenkins observed during oral argument for Mr. Goyal's post-trial
6  motions, "*Rigas* is not direct authority" on this case, because in *Rigas* "there was another scheme
7  afoot" in addition to alleged GAAP violations. Hr'g. Tr. 4:6-8 (Nov. 8, 2007). In contrast, here "the
8  evidence of the scheme" offered by the Government "rests solely in violations of GAAP." *Id*. 54:18-
9  19.

10  The Government's suggestion that former PwC auditors could properly provide opinion
11  testimony to establish "GAAP irregularities"—without doing any of the work required to establish
12  whether and how the alleged irregularities would have affected NAI's reported financial statements
13  during the relevant period (*see* Opp. at 4)—is itself a substantial issue for appeal. However, to reach
14  it, one must first resolve a prior substantial issue, namely whether the PwC auditors in fact testified
15  that the transactions in question actually violated GAAP. As set forth in Mr. Goyal's Opening
16  Memorandum, they did not so testify. *See* Dkt. 325 at 11. The Government deliberately did not
17  seek to qualify the PwC witnesses as experts, and Judge Jenkins precluded them from expressing
18  opinions on the appropriateness of NAI's accounting (because the witnesses had not done the
19  requisite analysis on this subject prior to the trial). VI Tr. 713:22-714:4; VIII Tr. 1188:15-18. But
20  even if they had offered an opinion, such opinion testimony regarding accounting and GAAP falls
21  within the category of "scientific, technical, or other specialized knowledge" that cannot be offered
22  by a non-expert witness, because an understanding of the subject matter requires training and
23  experience "beyond the common knowledge of the average layperson." *United States v. Hanna*, 293
24  F.3d 1080, 1086 (9th Cir. 2002); *see also City of Tuscaloosa v. Harcros Chemicals, Inc.*, No. CRIM.
25  00-539-KI, 158 F.3d 548, 564 n.17 (11th Cir. 1998) ("We do not doubt that accounting expertise is
26  among the sorts of technical and specialized expertise the use of which is governed by Rule 702.").
27  The Government asserts that even if its failure to offer an expert on GAAP constitutes a
28  "substantial" question, it would have no impact on all counts of the conviction. The Government's

position ignores that the fact that its entire case was constructed around allegations that NAI's accounting violated GAAP, and that it therefore relied on the alleged GAAP violations in support of every charge. The scheme to defraud charge (Count 2), the false statement counts (Counts 3-5, 7-10), and the false statements to auditors counts (Counts 13-19) were all predicated on the assumption that GAAP was violated. In its closing summation, for example, the Government described the central role that GAAP played in its theory, explaining that the jury should find Mr. Goyal guilty of the scheme to defraud and the false statement counts because NAI's accounting violated GAAP, and on the false statement to auditors counts because Mr. Goyal withheld information from PwC in order to conceal that the accounting violated GAAP:

> I'm going to kind of discuss the first count, securities fraud and false statements somewhat all at the same time. And the third group of charges, the false statements to the auditors, which I think is probably pretty clear to you at this point, relates again to [the same conduct]. …
>
> [T]he Government's position is that the Defendant is guilty of committing securities fraud by engaging in an ongoing systematic course of conduct … by not disclosing certain terms of transactions [to PwC]… which would have defeated the recognition of revenue at the time of the sale, which would cause the revenue number in the SEC filings to be materially false. …
>
> The Defendant is consciously choosing not to turn over this information [to PwC], because it's a fundamental huge problem for revenue recognition. If PwC sees these deals and sees what the terms are, they're not going to be able to recognize revenue.

XVI Tr. 1832:12-16, 1834:17-25, 1864:15-18.[2] Because the Government never argued to the jury that any criminal liability arose from a factual predicate other than an alleged violation of GAAP, an appellate determination that the Government cannot prove a GAAP violation without presenting expert testimony would require reversal on all counts. *See, e.g.*, *United States v. Galanis*, 695 F. Supp. 1565, 1569 (S.D.N.Y. 1988) (granting motion for bail pending appeal and explaining that "[i]n

---

[2] Judge Jenkins adopted the Government's theory, relying on the alleged GAAP violations as an underlying basis by which to affirm the verdict in his post-trial Order. *See* Dkt. 310 at 5, 8 10.

| Case No. CR-04-0201-SI | 4 | DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL |
|---|---|---|

light of the convoluted nature of the case" a significant error "would be sufficiently infectious to taint all counts").[3]

### B. The Evidence Was Insufficient To Establish That Mr. Goyal Acted With Criminal Intent

Whether Mr. Goyal acted with criminal intent is a substantial question for appeal that affects each count of the conviction. In its Opposition, the Government merely points to the conclusions regarding *mens rea* drawn in Judge Jenkins' post-trial Order. Again, however, the relevant standard for present purposes is not whether the conviction is likely to be reversed, but only whether a substantial question is presented. *Handy*, 761 F.2d at 1281. In any event, none of the facts relied upon by the Court or the Government, viewed either individually or together, "make[s] the government's incriminating explanation any more likely than [the defendant's] innocent explanation," *United States v. Esquivel-Ortega*, 484 F.3d 1221, 1227 (9th Cir. 2007) (reversing conviction); *see also See United States v. Brown*, 459 F.3d 509, 523-25 (5th Cir. 2006); *United States v. Cassese*, 428 F.3d 92, 98-103 (2d Cir. 2005); *United States v. Hernandez*, 301 F.3d 886, 890-93 (8th Cir. 2002).

Notably, the Government points to no specific facts suggesting that Mr. Goyal actually knew NAI's accounting was wrong, nor does it address Mr. Goyal's argument that general facts arising from Mr. Goyal's job responsibilities cannot establish *mens rea* in a criminal securities fraud case. Instead, the Government refers back to Judge Jenkins' Order refusing to set aside the verdict, which, as noted in Mr. Goyal's Opening Memorandum, rests on an unremarkable (and entirely innocent)

---

[3] Of course, Mr. Goyal is not required to identify a *single* issue likely to result in reversal or new trial on all counts. The requirement that appellate issues be "likely to result in reversal or an order for a new trial of all counts … has generally been read to mean that if error is found, it must not be harmless or unprejudicial error." *United States v. Bayko,* 774 F.2d 516, 522 (1st Cir. 1985). In any event, courts routinely evaluate grounds raised for appeal in combination for purposes of the § 3143(b) standard. *See, e.g., United States v. Hickey*, No. CR 97-0218 WHA, 2006 WL 1867708, at *15 (N.D. Cal. Jul. 6, 2006) (evaluating whether the "the appeal will raise no single issue or even a combination of issues that are fairly debatable" and if successful "would materially affect the length of sentence"); *United States v. Amato,* No. 01 Cr. 00058(LTS), 2007 WL 1438771, at *2 (S.D.N.Y. May 17, 2007) (evaluating whether defendant's issues for appeal raised substantial questions of law or fact "alone or in combination").

Case No. CR-04-0201-SI     5     DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RELEASE PENDING APPEAL

series of allegations that Mr. Goyal, as Chief Financial Officer, had a general understanding of accounting principles, was aware of NAI's earnings targets, and endeavored to achieve them.

As a quoted passage from a footnote in Judge Jenkins' post-trial Order indicates (*see* Opp. at 5), the Government elicited at trial evidence of two innocuous, one-off incidents involving Mr. Goyal. In particular, the Government put on evidence that Mr. Goyal's directed "that some concessions [to Ingram Micro] not be reduced to writing," and expressed concerns to former NAI employee Dale Cline regarding a memo drafted by a salesman, Chris Peterson, "questioning the appropriateness" of certain NAI payments to Ingram. *Id*. However, neither point raises a reasonable inference of criminal intent or supports the conclusion that Mr. Goyal knew the accounting was wrong.

The Government witness who testified that Mr. Goyal directed him not to include certain concessions to Ingram in quarter-end Ingram buy-in letters did not suggest that this action had anything to do with the appropriateness of the accounting. In fact, he admitted that it was quite possible that Mr. Goyal simply wanted to avoid agreeing to pay Ingram those concessions at that stage in the negotiations between the parties. IX Tr. 1347:17-1348:14 (Tony Mendoza).[4] In short, the point is simply not probative of guilt.

Similarly, while Mr. Cline testified that Mr. Goyal was upset by Peterson's memo (X Tr. 1375:9-18), Mr. Cline testified that Mr. Goyal did not say why he was upset about Mr. Peterson's memo, *id.* at 1375:8-10, and Mr. Cline did not even purport to connect Mr. Goyal's reaction to the specific accounting issues at issue in this case. On the contrary, Mr. Cline actually testified that Mr. Goyal *never* gave any indication that Mr. Goyal thought NAI's accounting was inappropriate. *Id.* 1376:24-1377:6, 1377:17-1378:4. Moreover, Mr. Peterson himself agreed that Mr. Goyal's response

---

[4] Indeed, the Government's theory that Mr. Goyal's direction not to include terms in the buy-in letters evidenced his knowledge of wrongdoing is logically inconsistent with its entire theory of the case. Having constructed its case around the allegation that Mr. Goyal concealed the Ingram buy-in letters themselves from PwC—without having *ever asked or instructed anyone* to conceal the letters—because he knew that the letters contained terms that invalidated NAI's accounting, the Government never explained why Mr. Goyal would take the additional step of *explicitly instructing* an employee not to include terms in those letters, which were supposedly being withheld anyway, because Mr. Goyal was concerned about the accounting implications.

1  was actually "measured" given that his memorandum was a "CYA" memo sent without prior
2  warning to Mr. Goyal (VII Tr. 996:10-23), and he testified that he had a positive opinion of Mr.
3  Goyal throughout his tenure at NAI (*id.* 997:1-8), which continued nearly one year after the memo
4  was written (*id.* 954:14-21).  In short, neither Mr. Cline's nor Mr. Peterson's testimony can raise a
5  reasonable inference of criminal intent, let alone prove intent beyond a reasonable doubt.  *See*
6  *Cassese*, 428 F.3d at 102, 103 (holding that two different conversations involving the defendant did
7  not support a finding of intent because the defendant did not admit to wrongdoing, the witness was
8  "never certain as to what, if anything, [the defendant] was upset about," and anger did not establish
9  criminal intent).
10       A general knowledge of accounting and a patchwork of entirely legal actions consistent with
11 Mr. Goyal's job responsibilities cannot support a conclusion that Mr. Goyal acted with fraudulent
12 intent.  *See, e.g., Cassese*, 428 F.3d at 99; *United States v. Brown*, 459 F.3d 509, 525 (5th Cir. 2006).
13 There can be little dispute that the sufficiency of the evidence of intent is "fairly debatable."

**III.   CONCLUSION**

For the foregoing reasons, the Court should order release on conditions pending appeal.

Dated: August 11, 2008                                  Respectfully submitted,

                                                        PRABHAT K. GOYAL

                                                        /s/  Stephen A. Jonas
                                                        WILMER CUTLER PICKERING
                                                            HALE AND DORR LLP
                                                        Stephen A. Jonas
                                                        Ronald C. Machen (admitted *pro hac vice*)